ROBERT J. MAY, *et al.*

*v.*

GEORGE H. SEIBERT, JR., *et al.*

(No. 14519)

Decided April 4, 1980.

*Jeremy C. McCamic, McCamic & McCamic,* for appellants.

*Ronald W. Kasserman, Galbraith, Seibert, Kasserman, Farnsworth, Gillenwater & Glauser,* for appellees.

HARSHBARGER, JUSTICE:

In *Cardot v. Luff,* ___ W.Va. ___, 262 S.E.2d 889 (1980) we discussed procedures for withdrawal for good cause by a lawyer from a civil case; and here we must decide what constitutes good cause.

Lawyer Seibert undertook to represent the Mays in a personal injury action. They agreed that he was to receive one-third of any recovery if suit were filed, and a fourth if there were settlement before suit. A complaint was filed, and as preparation for litigation progressed, he received a firm settlement offer of $25,000, the liability limits of defendant's insurer. The Mays rejected that offer, and Seibert attempted to discover defendant's assets.

He and his clients met in his office on December 19, 1977 to discuss the case, and Seibert alleges that the Mays then expressed a "complete loss of confidence" in

him. They say they had repeatedly asked him for an explanation of a letter he sent to them and expressed their concern over his failure to clarify it. Soon after the meeting, Seibert moved the trial court that he be permitted to withdraw from the case. The Mays answered Seibert's motion, objecting to his withdrawal and averring their confidence in him. After a hearing, a December 29, 1977 order granted him permission to withdraw. Trial had been set for January 16, 1978, but apparently was continued.

The Mays hired new counsel and within a few months accepted the $25,000 settlement; Seibert filed an attorneys' lien for the value of his services, which he asserted was $6,250; and a hearing on whether and to what extent Seibert was entitled to a fee resulted in an order awarding him $6,000. The Mays appeal.

Our court delineated causes which justify withdrawal from an attorney-client relationship in *Matheny v. Farley*, 66 W.Va. 680, 66 S.E. 1060, 1061 (1910):

'No general rule can be laid down by which it can, in all cases, be determined what cause will be sufficient to justify an attorney in abandoning a case in which he has been retained. But if the client refuses to advance money to pay the expenses of the litigation, or if he unreasonably refuses to advance money, during the progress of a long litigation, to his attorney to apply upon his compensation, sufficient cause may be furnished to justify the attorney in withdrawing from the further service of the client. So any conduct upon the part of the client during the progress of the litigation which would tend to degrade or humiliate the attorney, such as attempting to sustain his case by the subornation of witnesses, or any other unjustifiable means, which would furnish sufficient cause. So if the client demanded of the attorney the performance of an illegal or unprofessional act; or if the client were seeking to use the attorney as a tool to carry out the malicious or unlawful designs of the client, the attorney might lawfully abandon

the service. So if the client insists upon the employment of counsel with whom the attorney cannot cordially co-operate, the attorney will be justified in withdrawing from the case.'

*Id.*, 66 W.Va. at 684.

These same causes are in the Code of Professional Responsibility, W.Va. Code, Appendix:

DR 2-110 Withdrawal from Employment.

. . .

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

(1) He knows or it is obvious that his client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken for him, merely for the purpose of harassing or maliciously injuring any person.

(2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.

(3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively.

(4) He is discharged by his client.

(C) Permissive withdrawal.

If DR 2-110(B) is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

(1) His client:

(a) Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument

for an extension, modification, or reversal of existing law.

(b) Personally seeks to pursue an illegal course of conduct.

(c) Insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules.

(d) By other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively.

(e) Insists, in a matter not pending before a tribunal, that the lawyer engaged in conduct that is contrary to the judgment and advice of the lawyer but not prohibited under Disciplinary Rules.

(f) Deliberately disregards an agreement or obligation to the lawyer as to expenses or fees.

The Model Code of Professional Responsibility is currently being reconsidered by the American Bar Association Commission on Evaluation of Professional Standards and it has published a *Discussion Draft of ABA Rules of Professional Conduct,* being circulated for comments. Some relevant portions include:

### 1.16 *TERMINATING REPRESENTATION*

(a) Except as stated in paragraph (c), a lawyer shall withdraw from representing a client if:

(1) Continuing the representation will result in a course of conduct by the lawyer that is illegal or inconsistent with the Rules of Professional Conduct; or

(2) The lawyer's physical or mental condition disables the lawyer from adequately representing the client; or

(3) The lawyer is discharged by the client.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

(1) Withdrawal can be effected without material prejudice to the client;

(2) The client persists in a course of conduct that is illegal or unjust; or

(3) The client fails to fulfill an obligation to the lawyer regarding the lawyer's services.

(c) A lawyer shall continue representation notwithstanding good cause for terminating the representation when ordered to do so by a tribunal.

(d) Upon termination of representation, a lawyer shall take reasonable steps for the continued protection of a client's interests, including giving reasonable notice to the client, allowing time for employment of other counsel, delivering all papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by applicable law.

. . .

*Optional withdrawal*

A lawyer may withdraw from representation in a limited range of circumstances. *A lawyer may always withdraw if no material prejudice will result to the client.* Withdrawal is justified if the client persists in a course of wrongful conduct, for a lawyer is not required to lend assistance to such conduct. In such circumstances, withdrawal is permitted even if the client may be prejudiced, because that consequence can be prevented by the client's desisting from the conduct in question ... (Emphasis added).

An annotation, "Circumstances under which attorney retains right to compensation notwithstanding voluntary withdrawal from case" in 88 A.L.R.3d 246 (1978), also recites causes for withdrawal: a fraudulent action or claim by a client; retention of other counsel with whom the attorney cannot cordially cooperate; lack of client cooperation; client misconduct which degrades or humiliates the attorney; and refusal by a client to pay for services.

No cases are cited and we have found none, that state that refusal by a client to accept a "reasonable" settlement is good cause for withdrawal. *Van Gieson v. Magoon*, 20 Hawaii 146 (1910); *Burston v. Pinkis*, 25 N.Y.S.2d 12 (App. Term, Sup. Ct. 1941); *Suffolk Roadways, Inc. v. Minuse*, 56 Misc.2d 6, 287 N.Y.S.2d 965 (Spec. Term, Sup. Ct. 1968); and *Borup v. National Airlines, Inc.*, 159 F. Supp. 808 (S.D.N.Y. 1958), state that withdrawal because a client refuses to accept a settlement is *un*justified.

It may be that such a refusal, if accompanied by other factors which might independently justify withdrawal, strengthen a lawyer's case for terminating the relationship without client consent. In *Matarrese v. Wilson*, 202 Misc. 994, 118 N.Y.S.2d 5 (Spec. Term, Sup. Ct. 1952) an attorney's withdrawal was allowed when a client failed to agree to settle—and became abusive and made derogatory accusations about his lawyer. Refusal to settle where there was a total breakdown of communications between lawyer and client with resultant failure by the client to cooperate was held to justify withdrawal in *Ambrose v. Detroit Edison Co.*, 65 Mich. App. 484, 237 N.W.2d 520 (1975). Although discussions in these cases included reference to the mutual confidence between lawyer and client, none held that a "loss of confidence" plus refusal to settle justified a lawyer's withdrawal.

Seibert testified that he never accused the Mays of failing to cooperate. Yet, he relies heavily on *Ambrose, supra*, to justify his withdrawal. *Ambrose* holds that "a client's total failure to cooperate is sufficient 'good cause' to allow an attorney to discontinue representing his client and to recover for his services." *Id.*, 237 N.W.2d at 523. Those are not these facts.

The Mays did not assault their lawyer's integrity; there were no efforts to humiliate him; their bills were paid; they did not request that he do anything unethical or illegal. They expressed a legitimate concern about lack of communication from their attorney to them about the suit. The only conclusion from the evidence

presented is that Seibert terminated the relationship because the clients would not follow his settlement recommendation.

Rules of ethics declare that a lawyer is an agent of his client. It is the client's cause and decision that should prevail. *Discussion Draft, supra* at Section 1.3. This was articulated by Justice Geiler in *Suffolk Roadways, Inc. v. Minuse,* 56 Misc.2d 6, 287 N.Y.S.2d 965 (1968):

> The Court is loathe to deny an attorney compensation for services performed. However, the Court also recognizes that he is aware of his obligation and duties to a client.
>
> This awareness takes place from the moment he is a neophyte in the study of law. In law school he is made cognizant of the difficulties of the legal profession and the obligations and duties which will be expected of him by a client.
>
> He is given the choice of assuming these obligations. His admission to the Bar is a clear indication that he has chosen to fulfill these obligations.
>
> . . .
>
> The law recognizes that these obligations to a client are difficult and severe. Therefore these obligations are only imposed once an attorney decides to acquiesce in the establishment of the attorney-client relationship as evidenced by a retainer agreement, whether oral or written.
>
> Now the attorney cannot turn back. He is duty bound to represent the client to the best of his ability. He cannot voluntarily withdraw without just cause. If he does so, then he must pay the penalty—forfeiture of his compensation.
>
> The mere fact that the retainer is *not as profitable* as first imagined is no excuse for withdrawal. Neither is a rationalization of various events. . . .
>
> *Id.,* 287 N.Y.S.2d at 970.
> (emphasis added.)

When a lawyer withdraws for just cause, he is entitled to recover in quantum meruit for services rendered.[1] *Clayton v. Martin,* 108 W.Va. 571, 151 S.E. 855 (1930); *Matheny v. Farley, supra.* Other jurisdictions hold that if an attorney does not have good reason to withdraw he forfeits all compensation. 7A C.J.S. Attorney and Client §110; 7 Am.Jur.2d Attorneys at Law §221; Speiser, *Attorneys' Fees* §4:10 at 157 (1973). We find that in certain circumstances of unjustifiable withdrawal that remedy is too severe.

If a lawyer withdraws without good cause, but follows the procedure outlined in *Cardot v. Luff, supra, and there is no resultant prejudice to the client,* the attorney should be permitted to show the court the benefits which his work conferred on the client.

Here, a major factor in allowing Seibert a part of the fee the clients had obligated themselves to pay, was that the recovery did not increase or decrease as a result of his withdrawal. It was shown at the hearing below that the entire proceeds of the defendant's insurance policy were offered in settlement and that the defendant had no significant independent assets, although it would appear that this latter factor was not conclusively developed at the time that Seibert withdrew. It is not disputed that he had prepared the case for trial; nor is it controverted that the ultimate settlement was at the same figure originally obtained by Mr. Seibert. It would be unjust to deny any compensation to Mr. Seibert; but the trial court was in error when it awarded Seibert nearly his entire fee, there being no good cause for his termination of the attorney-client relationship. A more equitable result would be to allocate the fee that was

---

[1] If an attorney renders legal services in the absence of a contract, he is entitled to compensation for the reasonable value of his services. W.Va. Code, 30-2-15. The factors to be considered in a quantum meruit determination are listed in *Stafford v. Bishop,* 98 W.Va. 625, 127 S.E. 501 (1925). These factors may also aid the court in determining the compensation for an attorney who unjustifiably withdraws, but without prejudice to the client.

awarded between the two attorneys, based on the ratio of their time spent.

This is not a simple problem, capable of formularization.

It is clear, as a matter of public policy, that a blameless client should not have to pay two attorneys' fees. It is also clear that a withdrawing attorney's compensation for his work in good faith should be assessed in relation to the time and effort required by both lawyers toward the complete litigation process; and assessed from the perspective of the result ultimately obtained compared with the intermediate accomplishments by the withdrawing counsel. This determination will have to be made by each trial court on an *ad hoc* basis, because we cannot draw a standard applicable to all fact situations.

*Reversed and remanded.*